UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| KEINDE SUTTON, | Case No. 3:11-cv-424 |
| Plaintiff, | Judge Timothy S. Black |
| vs. | |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY DETERMINATION AS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE; (2) REMANDING THE CASE TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) CLOSING THIS CASE**

This is a Social Security disability benefits appeal wherein Plaintiff Keinde Sutton ("Sutton") argues that the administrative law judge ("ALJ") erred in finding him not disabled within the meaning of the Social Security Act and, therefore, not entitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 6-2, PAGEID 54-60). Sutton appeals the ALJ's determination and filed a Statement of Errors. (Doc. 7). The Commissioner filed a Memorandum in Opposition. (Doc. 9). Sutton filed a Reply. (Doc. 11). This appeal is now ripe for decision.

### I.  PROCEDURAL HISTORY

Sutton alleges disability on the basis of attention deficit hyperactivity disorder ("ADHD") and mood swings. (Doc. 6-5, PAGEID 178-189; Doc. 6-6, PAGEID 208). Sutton initially filed applications for SSI and DIB on December 24, 2008, alleging a

disability onset date of January 15, 2008.  (Doc. 6-5, PAGEID 178-189).  Sutton's claims were denied initially and denied again on reconsideration.  (Doc. 6-4, PAGEID 120-135).

Following denial upon reconsideration, Sutton requested a hearing before an ALJ. (Doc 6-4, PAGEID 138).  The ALJ held a hearing on April 19, 2011, during which Sutton and a vocational expert ("VE"), Charlota Ewers, testified.  (Doc. 6-2, PAGEID 91-113). In addition to testimony, a written record, including Sutton's medical records, was complied for the ALJ's consideration in determining Sutton's claim.  (Doc. 6).

Significantly, among the evidence submitted to the ALJ were medical source opinions of four doctors.  First, Mary Ann Jones, Ph.D., a clinical psychologist, evaluated Sutton in March 2009 upon referral from the Bureau of Disability Determination ("BDD").  (Doc. 6-7, PAGEID 263).  Dr. Jones diagnosed Sutton with ADHD, panic disorder without agoraphobia, developmental reading disorder, as well as borderline intellectual functioning.  (Doc. 6-7, PAGEID 267).  Dr. Jones assigned a global assessment of functioning ("GAF") score of 55.  (Doc. 6-7, PAGEID 268).

Dr. Jones opined that Sutton is "moderately impaired by his attention problems and anxiety difficulties.  (Doc. 6-7, PAGEID 268).  Dr. Jones, among other opinions, concluded that Sutton is moderately impaired in his "ability to understand, remember and follow instructions[,]" mildly impaired in his "ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks" and is moderately impaired in this "ability to withstand stress and pressures associated with day-to-day work activity[.]"

(Doc. 6-7, PAGEID 268). Medical consultants William Benninger, Ph.D. and Marianne Collins, Ph.D. agreed with the opinions of Dr. Jones. (Doc. 6-7, PAGEID 293; Doc. 6-9, PAGEID 470).

Between October 2010 and March 2011, Sutton regularly presented before Christine Valenti, Psy.M, and Andrea Bischoff, Psy.D, upon referral of Sutton's psychiatrist at Samaritan Behavioral Health. (Doc. 6-9, PAGEID 494-499). Sutton's initial goal for seeing Dr. Bischoff was to assist him in receiving "accommodations to improve his academic performance." (Doc. 6-9, PAGEID 494).

After interviewing Sutton and administrating a series of tests, Dr. Bischoff concluded that Sutton "has clinically significant difficulty in the areas of listening comprehension and listening vocabulary which measures his ability to make inferences about, and remember details from oral sentences and discourse." (Doc. 6-9, PAGEID 498). Dr. Bischoff opined that Sutton experiences "clinically significant symptoms of ADHD and has difficulty with oral comprehension." (Doc. 6-9, PAGEID 498). Dr. Bischoff suggested that "[h]elpful [academic] accommodations include extended test time, [and] a note taker." (*Id*.)

In April 2011, Dr. Bischoff answered interrogatories seeking "clarification of how [Sutton's] medical impairments affect his ability to perform work-related functions." (Doc. 6-10, PAGEID 566). In responding to those interrogatories, Dr. Bischoff stated that Sutton is capable of learning job tasks required for unskilled labor, but may need

written instructions, an environment with few distractions and more time to complete tasks.  (Doc. 6-10, PAGEID 567).

On June 9, 2011, the ALJ entered a decision finding Plaintiff not disabled.  (R. 10-22).  That decision became Commissioner's final determination upon denial of review by the Appeals Council.  (PAGEID 50, 45-47).  The "Findings," which represent the ALJ's rationale were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 15, 2008, the alleged onset date (20 CFR 404.1571, *et seq.* And 416.971 *et seq.*).

3. The claimant has the following medically determinable impairments: borderline intellectual functioning; ADHD; generalized anxiety disorder (20 CFR 404.1521 *et seq.* And 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

5. The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2008, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

(R. 10-16).  Sutton now appeals.

## II.  LEGAL STANDARD

On appeal, the Court must determine whether the ALJ's findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citation omitted).  The ALJ's findings must be affirmed if substantial evidence supports them, even if substantial evidence also exists to support a different conclusion, *i.e.*, "[t]he substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted).

A person is disabled only when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Dragon v. Comm'r of Soc. Sec., 470 F. App'x 454, 459 (6th Cir. 2012) (citing 42 U.S.C. § 423(d)(1)(A)).  No disability exists where claimant lacks "any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a).  The term "basic work activities" includes "[u]nderstanding, carrying out, and remembering simple instructions[,]" using judgment, and "[r]esponding appropriately to supervision, co-workers and usual work situations[.]"  20 C.F.R. § 404.1521(b).

To determine whether a claimant is disabled, the ALJ must "follow a five-step sequential analysis" that the Sixth Circuit summarizes as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citations omitted).

Here, the ALJ's inquiry ended at step two after determining that Sutton failed to show a severe impairment. "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act, on or prior to the date that the applicant was last insured." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007) (citing *Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988)). The Sixth Circuit describes a claimant's burden at step two "as a '*de minimis* hurdle.'" *Id.* (citing *Higgs*, 880 F.2d at 862).

The Sixth Circuit concludes that:

> an impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."

*Farris v. Sec'y of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir 1985) (citations omitted). Where an application is denied at the second-step of the sequential evaluation process, "the question . . . is whether there is substantial evidence in the record supporting the ALJ's finding that [the claimant] has only a 'slight' impairment that does not affect [the claimant's] ability to work." *Id*. at 90.

### III.  ANALYSIS

Sutton asserts six alleged errors in his Statement of Errors:

1. The ALJ errs in finding that Plaintiff suffers from no severe impairments.

2. The ALJ mischaracterizes Plaintiff's attendance at a local community college.

3. The ALJ fails to apply the treating source rule to the opinion of Plaintiff.s treating psychologist.

4. The ALJ substitutes her own lay opinion for the opinions of four separate medical experts.

5. The ALJ fails to apply the proper legal framework to the opinions of 3 agency consulting medical experts

6. The ALJ.s decision is not supported by substantial evidence and the Commissioner's position is not substantially justified.

(Doc. 7, PAGEID 597-602). The Court begins its review of Sutton's appeal by considering his arguments regarding the ALJ's analysis of medical source opinions.

Sutton contends that the ALJ erred at the second step of the process by failing to apply the treating source rule to the opinions of Dr. Bischoff.[1] In addition to assigning error to the ALJ's treatment of the medical opinion of Dr. Bischoff, Sutton argues that the ALJ failed to properly consider the opinions of three state agency consulting physicians: Dr. William Benniger, Ph.D, Dr. Marianne Collins, Ph.D, and Dr. Mary Ann Jones, Ph.D.

Regulations set forth "a hierarchy of acceptable medical source opinions that includes treating physicians or psychologists; examining, non-treating physicians or psychologists; and non-examining state agency medical reviewers." *Burnett v. Comm'r of Soc. Sec.*, No. C-1-07-843, 2009 WL 1586658, *8 (S.D. Ohio Jun. 4, 2009) (citing 20

---

[1] The Commissioner argues that Dr. Bischoff never actually treated Sutton, and, instead, simply "evaluated him" and offered an opinion regarding Sutton's academic capabilities in an effort to provide academic accommodations. (Doc. 9, PAGEID 614). The Court finds little merit to the Commissioner's argument in this regard because the Commissioner's regulations define a treating physician as a physician who provided the claimant "with medical treatment <u>or evaluation</u> and who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. (Emphasis suplied).

The Commissioner also seems to suggest that Dr. Bischoff is not a treating doctor because Sutton sought an evaluation solely in an effort to obtain academic accommodations. A doctor is not a treating source if the relationship was based solely on claimant's "need to obtain a report in support of" claimant's disability claim. *Id*. Here, the records show that Sutton presented before Dr. Bischoff regularly between October 2010 through March 2011 (Doc. 6-10, PAGEID 553-567), and although the initial reason for seeing Dr. Bischoff was to assist in obtaining academic accommodations, the Commissioner cites no authority to support the suggestion that a relationship for such purpose precludes a finding that such doctor is a treating doctor. Accordingly, Dr. Bischoff may certainly be considered a treating physician. Unfortunately, however, the ALJ never acknowledged whether Dr. Bischoff was or was not considered such.

C.F.R. § 404.1502, 1527(d), (e) and (f)).  Treating physicians top the hierarchy.  *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. at *9 (citations omitted).  Non-examining physicians, such as state agency consulting doctors, "are on the lowest rung of the hierarchy of medical source opinions." *Id*. (citations omitted).

Opinions of treating doctors must be given "controlling weight" where they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2).  Where a treating physician's opinions do not satisfy the test for controlling weight, the ALJ must then determine what weight to accord such opinion by applying all of the factors set forth in 20 C.F.R. §404.1527(c):

> namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. (citation omitted).

The ALJ is required "to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Id*. (citation omitted).  Such reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for

-9-

that weight." *Id*. (citing Soc. Sec. Rul. 96-2p, 1996 wl 374188, at *5 (1996)). Failure to explain "precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir. 1999)). Absent controlling weight given to a treating source, the ALJ must also give a meaningful explanation of the weight accorded all other medical source opinions. *Burnett*, 2009 WL 1586658 at *9; *see also* 20 C.F.R. § 404.1527(e)(2)(ii).[2]

Here, it is not clear what, if any, weight the ALJ gave to the opinions of Dr. Bischoff. It appears that the ALJ accepted Dr. Bischoff's conclusion that Sutton's GAF score was 69. (Doc. 6-2, PAGEID 58). However, nowhere does the ALJ address Dr. Bischoff's conclusions in the same report that, despite such a GAF, Sutton "has clinically significant difficulty in the areas of listening comprehension and listening vocabulary" or that Sutton experiences "clinically significant symptoms of ADHD and has difficulty with oral comprehension." (Doc. 6-9, PAGEID 498).

Again, an opinion of a treating doctor is entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

---

[2] 20 C.F.R. § 404.1527(e)(2)(ii) provides that "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."

is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). Because the ALJ made no specific findings as to whether Dr. Bischoff's opinions were entitled to controlling weight and otherwise failed to make sufficiently clear to this Court the actual weight accorded Dr. Bischoff's opinions, remand is warranted for further proceedings.

Sutton also contends that the ALJ erred in concluding that he failed to meet his *de minimis* burden at the second step of the sequential analysis. The Court notes that Dr. Bischoff's conclusions appear consistent with the medical opinions of examining physician Dr. Jones, who found that Sutton's "mental ability to understand, remember, and follow instructions is moderately impaired by his borderline intelligence and attention problems." (Doc. 6-7, PAGEID 268). In addition, Dr. Bischoff's opinions also appear consistent with the opinions of the state agency consulting doctors Dr. Benniger and Dr. Collins. (Doc. 6-7, PAGEID 293, Doc. 6-9, PAGEID 470). All of these opinions support a conclusion that Sutton's impairments are beyond slight impairments that more than minimally limit his abilities to perform basic work activities, *i.e.*, "[u]nderstanding, carrying out, and remembering simple instructions[.]" 20 C.F.R. § 404.1521(b).

In discounting this wealth of medical evidence, the ALJ generally relied on Sutton's college performance and activities of daily living to find that Sutton's impairments no more than minimally impacted his ability to work. While Sutton did

testify that he held a 3.6 grade-point average[3] and that he made the dean's list at Sinclair Community College (Doc. 6-2, PAGEID 102), his college transcript reveals that, during his first three quarters in school, he completed only two of ten courses in which he enrolled and his GPA is the result of earning one letter grade (Sutton earned a mark of satisfactory completion in the other course he completed). (Doc. 6-6, PAGEID 253).

Because Sutton's burden at step two is a mere *de minimis* hurdle, the Court agrees that Sutton's completion of only a small fraction of the courses in which he has enrolled during his college career is actually consistent and supportive of the medical evidence set forth above. In addition, again acknowledging Sutton's *de minimis* burden at step two, the ALJ's contention that Sutton's daily activities are inconsistent with the wealth of medical evidence is also not supported by substantial evidence. *See Burton v. Apfel*, 208 F.3d 212, 2000 WL 125853, *4 (6th Cir. Jan. 24, 2000). In reviewing the record, these doctors were aware of these same activities of daily living (Doc. 6-7, PAGEID 266, 293; Doc. 6-9, PAGEID 494), yet still found that Sutton is more than minimally limited in his ability to perform basic work functions.

Accordingly, substantial evidence does not support the ALJ's according of little or no weight to any medical evidence in assessing whether Sutton suffers from a severe

---

[3] Sutton's transcript, printed a month before the administrative hearing, shows a cumulative grade-point average of 3.0 for eight credit hours earned. (Doc. 6-6, PAGEID 253). In light of Sutton's testimony at the hearing, he apparently earned additional credit hours between the time the transcript was printed and the date of the administrative hearing. (Doc. 6-2, PAGEID 101-102).

impairment at the second step of the sequential analysis.  The Court finds merit to Sutton's first, second, third and fifth statements of error and concludes that the Commissioner's non-disability finding at step two of the sequential analysis is unsupported by substantial evidence and is **REVERSED**.   The current state of the record demonstrates that Sutton meets his *de minimis* burden at step-two of the sequential analysis and a **REMAND** is warranted for further fact-finding determination of the remaining steps.

## V.  CONCLUSION

Based upon the foregoing, the Commissioner's non-disability finding is **REVERSED** and this case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

**IT IS SO ORDERED.**


Date:  8/14/12                                                              *s/ Timothy S. Black*
                                                                                        Timothy S. Black
                                                                                        United States District Judge